CALHOUN's Lessee *v.* DUNNING.(*a*)

*Record evidence.—Blunston's licenses.—Improvement.—Award.*

A judgment against *cestui que trust* is evidence against the trustee, in a suit brought by him—the parties being substantially the same in both suits.

In ejectment, a record of an action of trespass between the defendant and one C., was offered in evidence by the defendant; C. had there pleaded *liberum tenementum*, and there had been a reference in the case, on which, the property at present in dispute was awarded to the defendant; and it appearing that the plaintiff had never controverted C.'s right, it was *held*, that the record was admissible.

Blunston's licenses have always been deemed valid, and many titles in Pennsylvania depend upon them.[1]

A mere improvement right, subsequent to a legal right vested in another, ought never to be rendered effectual in favor of a settler.[2]

An award of referees cannot give a right to land, but will settle a dispute about it, either in an ejectment, or in an action of trespass, and such an award may be conclusive, if this be the agreement of the parties.(*b*)

EJECTMENT. The inception of the plaintiff's title depended upon an extract from the record of licenses or grants by Blunston, dated March 1734–5, which was merely a minute in these words : "John Calhoun, 200 acres on Dunning's run, called the Dry Spring, between Jacob Dunning and Ezekiel Dunning." By the field-notes of Cookson, a surveyor, it appeared, that there was a survey of the land, on the 22d of March 1743–4, for Robert Dunning; but a memorandum was afterwards made by one Morse, a clerk to the surveyor, " that the land was claimed by the heirs of John Calhoun." John Calhoun having entered a *caveat*, the decision of the board of property was pronounced, on the 24th of November 1766, setting forth, "that under Blunston's license, J. Calhoun took possession and cleared three acres, built a cabin, and returned to Chester county, where he dwelt; that in 1743, one Armstrong got a warrant, but was told by Dunning, that the land belonged to Calhoun, of whom he had purchased it; that afterwards, Dunning took out a warrant in his own name, and got a survey made, on which a *caveat* was entered against him; that an ejectment was brought, in which Dunning lost the possession; that Dunning then purchased Armstrong's warrant, got a survey upon it, and now *[*121]claimed a patent; but the board of property ordered the patent to issue to Calhoun." By will, dated the 19th of September 1752, John Calhoun devised the premises to Rebecca Calhoun, who conveyed the same to James Calhoun, the lessor of the plaintiff, by deed the 20th July 1763 ; and he, having made a re-survey, on the 5th of September 1788, obtained a patent on the 3d of April 1789.

The defendant's claim depended on the following facts : In 1753, Dunning

---

(*a*) Decided at Carlisle, in Cumberland county *nisi prius*, 11th May 1792, before SHIPPEN and BRADFORD, Justices.

(*b*) See Lessee of Dixon *v.* Morehead, Addis. 216, 231 n. In ejectment, an award of referees, appointed under the act of assembly of 1705, is not conclusive of title. Duer *v.* Boyd, 1 S. & R. 203. But an award of arbitrators, under a submission at common law, fixing a boundary line between the land of the parties, is final. Davis *v.* Havard, 15 Id. 165.

[1] See Dunning *v.* Caruthers, 4 Yeates 13.
[2] Hepburn *v.* Hutchinson, 2 Yeates 329; Eddy *v.* Faulkner, 3 Id. 580; Pigou *v.* Nevil,

4 Id. 266; Pennsylvania *v.* Huston, Addis. 334; Adams *v.* Jackson, 4 W. & S. 55.

Calhoun v. Dunning.

lived on the premises, and reaped corn on it, so late as 1788. In 1779, one Caruthers was making a fence on part of the land; he continued to live there, at the time of the resurvey in 1788; and he was considered as tne owner by purchase from Calhoun. But in 1764, a survey was made for Dunning, under Armstrong's warrant, which, as the surveyor affirmed, left the disputed land entirely out of the lines. In an action of trespass, between Dunning and Caruthers (plea, *liberum tenementum*), there was a reference, in the year 1783, on which it was awarded, and the award affirmed by the court, that the line should be run between the parties, so as to leave the disputed land in the possession of the plaintiff, Dunning.

I. It was objected, that the record of the action of trespass, could not be read on the trial of the present ejectment, as it was not between the same parties. But it was answered, that Caruthers, the defendant then, was now the person really interested, as owner of the land; that Calhoun was merely a trustee; and that, as an action might be brought in the name of the *cestui que trust* (*Kennedy* v. *Fury*, 1 Dall. 72), the judgment ought to be admitted. And—

BY THE COURT.—We can never acquiesce in an attempt so manifestly calculated to evade the truth and justice of the case. Shall it be in the power of a party, by suppressing a deed; or by employing the name of a trustee; to avoid the legal effect of a judgment rendered against him? In the action of tresspass, Caruthers pleaded *liberum tenementum*, as to the very lands now claimed by Calhoun; and Calhoun has never controverted his right. It is plain, therefore, that Calhoun's name is now employed, for the use of Caruthers; and that the parties are really, though not nominally, the same, in both suits.

Objection overruled.

II. In the charge to the jury, it was stated—

BY THE COURT.—Blunston's licenses have always been deemed valid; and many titles in Pennsylvania depend upon them. The equitable right acquired by the lessor of plaintiff, under a license, has been perfected by a survey and patent; so that he clearly possesses a legal title to the land in dispute.

On the other hand, the defendant has no office-right, but rests his pretensions on an early possession, the exclusion of the disputed *land [*122 in the resurvey of 1764, and the award and judgment in the action of trespass. Of the equitable circumstances, the jury will judge, with this remark from the court; that a mere improvement right ought never to be rendered effectual in favor of a settler, when it commences subsequent to the existence of the legal right, regularly vested in another.

The great objection, however, to the plaintiff's recovery, arises from the award and judgment. To be sure, an award cannot give a right to land; but a report of referees will settle a dispute about land, either in an ejectment, or in an action of trespass. In the case of *Fox's Lessee* v. *Franklin*, a similar report has been made, and affirmed. Indeed, such a report is more operative than a verdict: for a verdict in ejectment is not conclusive; but when parties choose to adjust their disputes amicably, they generally agree, that the award shall be final; and under such an

agreement, neither of them can hope again successfully to agitate the same points.

Under this charge, the plaintiff suffered a nonsuit. (*a*)

---

(*a*) In Duer *v.* Boyd, 1 S. & R. 213, Judge YEATES, who had been of counsel in the case of Calhoun *v.* Dunning, said, he was strongly inclined to think, that implicit confidence was not to be placed on the accuracy of the report of it. The case of Dunning *v.* Caruthers, 4 Yeates 13, appears to have been an action for the same land, which was in dispute in Calhoun *v.* Dunning, and as similar questions must have arisen in both suits, there is a great discrepancy between the two reports.